UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 07-CV-5384 (JFB) (MLO)

———————————

JOHN STAMPOLIS,

Plaintiff,

VERSUS

PROVIDENT AUTO LEASING COMPANY AND ATUT ALI,

Defendants.

———————————

**AMENDED MEMORANDUM AND ORDER**
November 7, 2008

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff John Stampolis ("Stampolis") brings this action in diversity against Provident Auto Leasing Company ("Provident") and Atut Ali ("Ali") (collectively, "defendants"), seeking damages for personal injuries allegedly sustained as a result of a motor vehicle accident. Plaintiff asserts (1) state law tort claims against defendant Ali, who leased and operated the vehicle that collided with plaintiff's vehicle; and (2) a New York statutory claim of vicarious liability against defendant Provident, as the owner and lessor of that vehicle.

The instant motion addresses only the statutory claim of vicarious liability against Provident. Both parties have stipulated that any assertions of negligence on the part of Provident have been waived. Plaintiff asserts that Provident is nonetheless strictly liable as the owner of the leased vehicle, pursuant to New York State Vehicle and Traffic Law Section 388 ("Section 388"). Provident argues, however, that 49 U.S.C. § 30106 (commonly known as the "Graves Amendment") bars plaintiff's claim of vicarious liability. The parties do not dispute that the Graves Amendment, if valid, would preempt the conflicting provision of Section 388. The point of contention is the constitutionality of the Graves Amendment and whether it falls outside the scope of Congress' power under the Commerce Clause of the Constitution.

Defendant Provident moves to (1) dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or (2) in the alternative, for summary judgment on the issue of vicarious liability, on the ground that the Graves Amendment preempts Section 388. As agreed upon by the parties at oral argument, because the Court will take into account a submitted exhibit outside of the pleadings, it

will rule on Provident's motion for summary judgment.

For the reasons set forth below, the Court finds that the Graves Amendment is constitutional because it regulates both (1) the "instrumentalities of" and "things in" interstate commerce, and (2) an activity that "substantially affects" interstate commerce. Therefore, because plaintiff's claim against Provident fails as a matter of law under the Graves Amendment, defendant's motion for summary judgment is granted.

## I. BACKGROUND

### A. Facts

The following facts are taken from the complaint and submitted exhibits. They are construed in a light most favorable to plaintiff Stampolis, who is the non-moving party.

On August 9, 2007, a 2004 Nissan motor vehicle bearing a State of New Jersey registration plate number NVY79S headed eastbound on Glen Cove Road at or near its intersection with Dow Avenue in North Hempstead in the County of Nassau and State of New York. (Compl. ¶¶ 6, 14.) Defendant Provident, an Ohio corporation, was the owner and lessor of this vehicle. (Compl. ¶¶ 2, 6, 8; Def.'s Mem., Ex. B (lease agreement between defendants Provident and Ali).) Defendant Ali, a New Jersey resident, was the lessee and operator of the vehicle at that time, having entered a lease agreement with Provident for a period of 60 months on April 30, 2003. (Compl. ¶¶ 3, 10-14; Def.'s Mem., Ex. B.)[1]

Stampolis was heading southbound at or near the intersection of Glen Cove Road and Dow Avenue when his vehicle collided with the one driven by Ali. (Compl. ¶¶ 15, 15.)[2]

As a result of the collision, plaintiff, a New York resident, sustained serious personal injuries, as defined in Section 5102(d) of the Insurance Law, and suffered economic loss greater than basic economic loss, as defined in Section 1502(a) of the Insurance Law. (Compl. ¶ 20.) As recovery for these injuries, plaintiff seeks monetary damages from Ali, the allegedly negligent driver of the Nissan vehicle, (Compl. ¶ 18), and from Provident, the vehicle's owner. (Compl. ¶ 10.)[3]

Although plaintiff asserted claims of negligence against Provident in the complaint, it has since been stipulated by counsel for all parties that those assertions of negligence on the part of Provident are waived. (Pl.'s April 22, 2008 Ltr.). The only remaining claim against Provident is that of vicarious liability under Section 388, which Provident argues is preempted by the Graves Amendment.

### B. Procedural History

Plaintiff commenced this action on December 27, 2007. Defendant Provident filed a verified answer and cross-claim against defendant Ali on March 3, 2008, and Provident made the instant motion on July 28, 2008.

---

[1] The Complaint misnumbered paragraphs such that numbers 10, 11, and 12 are used twice. The first paragraph 12, plus the second set of paragraphs 10-12, support the foregoing statement.

[2] The Complaint misnumbered paragraphs such that numbers 15 and 16 are used twice. Both paragraphs numbered 15 support the foregoing statement.

[3] The first paragraph numbered 10 supports the foregoing statement.

2

Oral argument took place on October 22, 2008. At oral argument, with the consent of the parties, the Court made clear that it would treat this motion as one for summary judgment and thereby take into consideration any additional documents submitted by the parties. Both parties agreed on the record that there are no genuine issues of material fact with respect to the claim against Provident, and the only issue to be resolved by the Court is the constitutionality of the Graves Amendment, based upon the Commerce Clause.

## II. LEGAL STANDARD

The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 492 F.3d 89, 96 (2d Cir. 2007). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson*, 477 U.S. at 248 (holding summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); *Rivkin v. Century 21 Teran Realty LLC*, 494 F.3d 99, 103 (2d Cir. 2007). As such, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

With respect to the claim against Provident, summary judgment is appropriate because it is undisputed that no genuine issues of material fact remain. Indeed, the viability of plaintiff's

claim turns on the constitutionality of the Graves Amendment, which is purely a legal question. As long as the Graves Amendment is determined to be a valid exercise of Congressional power under the Commerce Clause, summary judgment in favor of movant Provident would be proper.

III. DISCUSSION

A. The Graves Amendment

Enacted in 1924, the New York Vehicle and Traffic Law Section 388 imposes vicarious liability on the owner of a vehicle for injuries caused by a driver who uses the vehicle with the owner's permission. It provides, in relevant part:

> Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.

N.Y. Veh. & Traf. Law § 388.

On August 10, 2005, Congress implemented the Safe, Accountable, Flexible, Efficient Transportation Equity Act, which was a comprehensive transportation bill that included the Graves Amendment. The section entitled "Rented or Leased Motor Vehicle Safety and Responsibility" states, in relevant part:

> (a) In general. – An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if –
> (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
> (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106(a). The Graves Amendment applies to all actions commenced on or after August 10, 2005, without regard to whether the harm that is the subject of the action, or the conduct that caused the harm, occurred before that date. 49 U.S.C. § 30106(c). This action was filed by plaintiff on December 27, 2007 and is indisputably governed by the federal statute.

Prior to the enactment of the Graves Amendment, New York courts consistently held that owners of leased vehicles were vicariously liable under Section 388 for the negligent operation of those vehicles. *See Merchants Ins. Group v. Mitsubishi Motor Credit Assoc.*, 525 F. Supp. 2d 309, 310 (E.D.N.Y. 2007) (collecting cases). New York courts have now held that the express language of the Graves Amendment preempts Section 388 via the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, as long as there is no negligence or criminal wrongdoing on the part of the owner. *See id.*, 525 F. Supp. 2d at 311; *Graham v. Dunkley*, 50 A.D.3d 55, 58 (N.Y. App. Div. 2008); *see also Flagler v. Budget Rent A Car System, Inc.*, 538

F. Supp. 2d 557, 558 (E.D.N.Y. 2008) ("There is no question but that the Graves Amendment preempts state laws that impose vicarious liability on businesses that rent or lease motor vehicles"). The parties do not dispute that if the Graves Amendment is constitutional under the Commerce Clause, then it preempts the New York statute in this case. If, on the other hand, Congress exceeded its powers by enacting the Graves Amendment, then plaintiff's cause of action against Provident for vicarious liability, as provided by Section 388, will stand.

### B. The Commerce Clause

Plaintiff argues that Congress exceeded its authority under the Commerce Clause by enacting the Graves Amendment. As set forth below, the Court finds that plaintiff's argument fails as a matter of law.

The Constitution delegates to Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Art. I, § 8, cl. 3. In *United States v. Lopez*, the Supreme Court delineated three broad categories of activity that Congress may regulate under this commerce power. 514 U.S. 549, 558 (1995). First, Congress may "regulate the use of the channels of interstate commerce." *Id*. Second, Congress may "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Id*. Third, Congress may regulate "those activities having a substantial relation to interstate commerce, i.e. those activities that substantially affect interstate commerce." *Id*.

There is thus far no Supreme Court or Second Circuit decision addressing the constitutionality of the Graves Amendment. However, challenges based on the Commerce Clause have been rejected by almost every state and federal court who have considered the issue. *See, e.g.*, *Graham*, 50 A.D.3d at 60 (holding the Graves Amendment to be constitutional under the second and third *Lopez* categories and reversing the lower court's ruling of unconstitutionality), *reversing Graham v. Dunkley*, 13 Misc. 3d 790 (Sup. Ct. 2006), *cert. denied,* 10 N.Y.3d 835 (N.Y. Apr. 29, 2008); *Flagler,* 538 F. Supp. 2d at 559 (holding the Graves Amendment to be constitutional under the second and third *Lopez* categories); *Berkan v. Penske Truck Leasing Co.*, 535 F.Supp. 2d 341, 345 (W.D.N.Y. 2008) (same); *Garcia v. Vanguard Car Rental USA, Inc.*, 510 F. Supp. 2d 821, 835 (M.D. Fla. 2007) (holding the Graves Amendment to be constitutional under all three *Lopez* categories); *Jasman v. DTG Operations, Inc.*, 533 F. Supp. 2d 753, 757 (W.D. Mich. 2008) (same); *Dupuis v. Vanguard Car Rental USA, Inc.*, 510 F. Supp. 2d 980, 985 (M.D. Fla. 2007) (holding the Graves Amendment to be constitutional under the second *Lopez* category); *Seymour v. Penske Truck Leasing Co.*, No. 407 Civ. 015, WL 2212609, at *2 (S.D. Ga. July 30, 2007) (same). In fact, this Court's research has found only one federal court that has concluded otherwise – namely, the United States District Court for the Southern District of Florida, in two cases decided in the same year, found the Graves Amendment to be outside the scope of the Congressional commerce power. *See Vanguard Car Rental USA, Inc. v. Huchon*, 532 F. Supp. 2d 1371 (S.D. Fla. 2007); *Vanguard Car Rental USA, Inc. v. Drouin*, 521 F. Supp. 2d 1343 (S.D. Fla. 2007). Those decisions conflicted with the another district court in Florida – namely, the United States District Court for the Middle District of Florida – which found the Graves Amendment to be constitutional. *Garcia*, 510 F. Supp. 2d at 835.

5

However, the Eleventh Circuit recently resolved this conflict among district courts in its Circuit by holding that the Graves Amendment is a proper exercise by Congress of its Commerce Clause power under the third *Lopez* category. *See Vanguard Car Rental USA, Inc.,* 540 F.3d 1242, 1249-53 (11th Cir.. 2008).

This Court agrees with Judge Block's thorough and well-reasoned decision in *Flagler*, 538 F. Supp. 2d at 559, as well the analysis by the numerous other courts cited above, that the Graves Amendment is a constitutional exercise of Congressional power pursuant to the Commerce Clause of the Constitution. Specifically, the Court concludes that the Graves Amendment regulates the "instrumentalities of" or "things in" commerce, as well as an activity that "substantially affects" interstate commerce.

C. Application

1. "Use of the Channels of Interstate Commerce"

In this case, Provident does not argue that the Graves Amendment is a regulation of the use of the channels of interstate commerce, which typically "includes highways, railroads, air routes, navigable rivers, and telecommunications networks; this category also reaches misuse of channels of interstate commerce such as the interstate transport or shipment of stolen goods, kidnapped persons, prostitutes, and illegal lottery tickets." *Minnesota ex rel. Hatch v. Hoeven*, 370 F. Supp. 2d 960, 968 (D.N.D. 2005); *see also United States v. Ballinger,* 395 F.3d 1218, 1225-26 (11th Cir. 2005) (stating that channels are "interstate transportation routes . . . [including] highways, railroads, navigable waters and airspaces"); *United States v. Bishop*, 66 F.3d 569, 588 (3d Cir. 1995) ("The Supreme Court has made clear that airplanes, railroads, highways and bridges constitute instrumentalities of interstate commerce which Congress can regulate under the Commerce Clause.") (internal citations omitted). Even though some courts have found the Graves Amendment to be constitutional under this first category, *see, e.g.*, *Garcia*, 510 F. Supp. 2d at 833, several courts, particularly those in New York, have declined to do so. *See Graham,* 50 A.D.3d at 58; *Flagler,* 538 F. Supp. 2d at 559. Because this argument is not raised in the instant motion and the Graves Amendment is clearly constitutional under the second and third categories, this Court need not address whether the Graves Amendment is also constitutional based on this first *Lopez* category.

2. "Instrumentalities of" or "Things In Interstate Commerce"

Under the second *Lopez* category, Congress "is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, *even though the threat may come only from intrastate activities*." *Pierce County, Wash. v. Guillen*, 537 U.S. 129, 147 (2003) (citing *Lopez*, 514 U.S. at 558) (emphasis added). With respect to this category, this Court agrees that automobiles, particularly those that are leased or rented, are "the quintessential instrumentalities of modern interstate commerce." *Graham*, 852 N.Y.S. 2d at 174-75 (quoting *Bishop*, 66 F.3d at 588); *see also Ballinger*, 395 F.3d at 1226 ("Instrumentalities of interstate commerce . . . are the people and things themselves moving in commerce, including automobiles, airplanes, boats, and shipments of goods.") (internal citations omitted); *United States v. Oliver,* 60 F.3d 547, 550 (9th Cir. 1995) ("[C]ars are themselves

instrumentalities of commerce, which Congress may protect."), *rev'd on other grounds sub nom. Jones v. United States*, 526 U.S. 227 (1999); *United States v. McHenry*, 97 F.3d 125, 127 (6th Cir. 1996) ("[O]nce we determine that congressional action has been directed toward regulating or protecting an 'instrumentality' of interstate commerce – e.g., cars, trains, airplanes, ships – that is the end of the Category Two inquiry.").

As clearly stated in *Lopez*, because these vehicles are "instrumentalities of," as well as "things in," interstate commerce, Congress may regulate the entire class of leased and rental vehicles, even if "the threat [to them] may come only from intrastate activities." 514 U.S. at 558. Therefore, plaintiff's argument regarding the purported overbroad reach of the Graves Amendment – namely, that even under this category of regulation authorized by the Commerce Clause, there must be some jurisdictionally limiting language or requirement showing that a particular car in question crossed state lines – is simply without merit. *See Flagler*, 538 F. Supp. 2d at 60; *see also United States v. Giordano*, 442 F.3d 30, 41 (2d Cir. 2006) ("It is well-established that when Congress legislates pursuant to this branch of its Commerce Clause power, it may regulate even purely intrastate use of those instrumentalities.") (citing *United States v. Gil*, 297 F.3d 93, 100 (2d Cir. 2002) (collecting cases)); *Gil*, 297 F.3d 100 ("A showing that a regulated activity substantially affects interstate commerce (as required for the third category) is not needed when Congress regulates activity in the first two categories.")*; United States v. Gilbert,* 181 F.3d 152, 158 (1st Cir. 1999) (holding that, with respect to an intrastate phone call, "a telephone is an instrumentality of interstate commerce and this alone is a sufficient basis for jurisdiction based on interstate commerce"); *Kerbs v. Fall River Indus.*, 502 F.2d 731, 738 (10th Cir. 1974) ("[A]s long as the instrumentality itself is an integral part of an interstate system, Congress has power, when necessary for the protection of interstate commerce, to include intrastate activities within its regulatory control.").

Plaintiff relies on several circuit court cases to argue that, in upholding statutes under the second *Lopez* category, courts have not held that cars are *per se* instrumentalities of interstate commerce; rather, a *de minimus* showing that the car in question had at some point been an instrumentality of interstate commerce is required. (Pl.'s Mem., at 4., citing *United States v. Ballinger*, 395 F.3d 1218 (11th Cir. 2005), *United States v. McHenry*, 97 F.3d 125, 127 (6th Cir. 1996), and *United States v. Bishop*, 66 F.3d 569, 588-90 (3d Cir. 1995).) However, this is a misreading of those cases, which, in any event, are not binding on this Court. In *Bishop*, the discussion of the *de minimus* jurisdictional requirement was in the context of analyzing the third *Lopez* category, not the second category. In fact, the Third Circuit in that case not only determined that the federal car-jacking statute, 18 U.S.C.A. § 2119, was a constitutional exercise of Congressional power under the third *Lopez* category, but further held that cars were instrumentalities of interstate commerce and thus entitled to second *Lopez* category protection as well. *See Bishop*, 66 F.3d at 588-89 ("Instrumentalities differ from other objects that affect interstate commerce because they are used as a means of transporting goods and people across state lines. Trains and planes are inherently mobile; highways and bridges, though static, are critical to the movement of automobiles. It would be anomalous, therefore, to recognize these categories of instrumentalities but to suggest that the similarly mobile automobile is not also an instrumentality of interstate commerce. [T]he

fact that automobiles are often used for intrastate travel does not differentiate them from [trains and airplanes].").

The same is true of the Sixth Circuit's decision in *McHenry*, which concurred with the holding in *Bishop*. *See McHenry,* 97 F.3d at 127 ("As both the Third and Ninth Circuits have recognized, cars are themselves instrumentalities of commerce, which Congress may protect . . . [A]lthough it has been argued that congressional authority under Category Two should be limited to regulating cars and other instrumentalities 'actually engaged in interstate commerce' or 'integrally related to an interstate commerce network,' *Bishop*, 66 F.3d at 597 (Becker, J., dissenting in part), such a rule seems inconsistent with *Lopez*'s own articulation of the commerce power."). The Sixth Circuit went on to explain:

> Instrumentalities of interstate commerce – e.g., cars, trains, airplanes – retain the inherent potential to affect commerce, unlike other objects of regulation. Thus, even if a particular activity involving an instrumentality might not, through repetition elsewhere, substantially affect interstate commerce during the moment of regulation, the activity still falls within Category Two because the object of regulation contains the unique capacity to affect commerce at some future point in time. In the case of carjackings, for instance, the inherent mobility of cars leads to a substantial likelihood that commerce will be affected – if not in the act of carjacking itself, then in subsequent use of the car by whoever eventually possesses it.

*Id*. at 127 (internal citation omitted). Thus *Bishop* and *McHenry* both explicitly rejected the argument that Congress lacks the power to regulate purely intrastate occurrences of the regulated instrumentalities in question – namely, cars.

Plaintiff's reliance on the Eleventh Circuit decision in *Ballinger* is also misplaced. In *Ballinger*, the statute being contested did not regulate cars directly. In that case, Congress criminalized arson under 18 U.S.C. § 247 when the offense "is in or affects interstate or foreign commerce." 395 F.3d at 1224. Arson is not in and of itself a channel or instrumentality of interstate commerce. The reason the Eleventh Circuit upheld the constitutionality of the statute in that case was because it concluded that the jurisdictional language brought the arson targeted by the statute under the first and second *Lopez* categories. *See id.* at 1227 ("[T]he statute falls squarely within Congress' power under the first two *Lopez* prongs to regulate the channels and instrumentalities of commerce."); *cf. United States v. Santiago* ("In [*Jones v. United States*, 529 U.S. 848 (2000)], the Supreme Court merely concluded that the federal arson statute, 18 U.S.C. § 844(i), did not reach arson of an owner-occupied residence, since such property could not be said to have been 'used in . . . any activity affecting commerce' as required by the statute. In construing the arson statute in this fashion, the Court thereby avoided the constitutional question that would have arisen under *Lopez* had it read § 844(i) to cover such 'traditionally local criminal conduct.'"). In other words, in *Ballinger*, the statute's very definition of the crime transformed the arson into an offense that involved the channels and instrumentalities of commerce. This is not to say, however, that similar jurisdictional language would have been needed if the

8

activity or object being regulated was by itself a channel or instrumentality of interstate commerce. Unlike arson, automobiles are such instrumentalities and, therefore, *Ballinger* is not inconsistent with the holdings of *Bishop* and other courts that do not require any jurisdictional nexus when the regulation at hand falls under the second *Lopez* category.

Despite these foregoing contentions, plaintiff acknowledges that courts have found automobiles to be instrumentalities of interstate commerce.[4] (Pl.'s Mem., at 4.) In an effort to counter this point, Stampolis argues that the Graves Amendment does not regulate automobiles but instead regulates tort liability, which is not itself an instrumentality of, or thing in, commerce. (Pl.'s Mem., at 5.) As the challenger did in *Graham*, 50 A.D.3d at 59, plaintiff argues that the Graves Amendment regulates "state-imposed liability." (Pl.'s Mem., at 6.)

This Court is wholly unpersuaded by plaintiff's attempt to argue that the Graves Amendment does not regulate cars. As the New York appellate court made clear in *Graham*, "[*Pierce County, Wash. v. Guillen*, 537 U.S. 129, 147 (2003)] is instructive in that the statute at issue there could have been seen as regulating state discovery rules, an area of state concern. However, the Supreme Court indicated that this was too narrow a description of the activity being regulated." 852 N.Y.S.2d at 59. *Pierce* involved a federal statute, 23 U.S.C. § 409, that prohibited discovery in state actions of certain information gathered in connection with federal highway safety programs. *See id.* at 724-25. The Supreme Court nonetheless upheld the statute, describing it as legislation aimed at improving safety in the channels of commerce and increasing protection for the instrumentalities of interstate commerce.[5] *See id.* at 732.

Plaintiff's narrow characterization of the Graves Amendment as simply regulating tort liability is, therefore, misplaced. Indeed, plaintiff's logic would render a broad range of federal regulations unconstitutional, since regulations by their very nature usually involve some kind of state-imposed penalty, prohibition, or cost. Plaintiff is essentially arguing that even if a regulation applies to the instrumentalities of or things in interstate commerce, it should be struck down if the means of regulation alters civil or criminal liability. However, this position is untenable. *See Flagler*, 538 F. Supp. 2d at 560 ("The means that Congress uses, however, is irrelevant as long as its goal is to protect interstate commerce."); *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 571-72 (1997) ("[t]he Commerce Clause had not only granted Congress express authority to override restrictive and conflicting commercial regulations adopted by the States, . . . it also had immediately effected a curtailment of state power. 'In short, the Commerce Clause even without implementing legislation by Congress is a limitation upon the power of the States.'") (internal citations omitted); *Mondou v. New York, New Haven & Hartford R.R. Co.*, 223 U.S. 1, 47 (1912) ("This power over commerce among the states, so conferred upon Congress, is complete in itself, extends incidentally to

---

[4] At oral argument, plaintiff further conceded that leased and rental vehicles, in particular, are also instrumentalities of interstate commerce.

[5] The Supreme Court did not address in *Pierce* whether the statute in that case violated the principles of dual sovereignty embodied in the Tenth Amendment by prohibiting states from regulating discovery and admissibility rules in state litigation. *See id.* at 732 n.10.

9

every instrument and agent by which such commerce is carried on, may be exerted to its utmost extent over every part of such commerce, and is subject to no limitations save such as are prescribed in the Constitution."). In fact, courts have consistently found that legislation passed by Congress under its commerce power may impact or preempt civil remedies or liability schemes under state law or criminalize certain offenses. *See, e.g.*, *Geier v. American Honda Motor Co.*, 529 U.S. 861, 900-01 (2000) (preempting state "no-airbag" tort actions); *Mondou*, 223 U.S. at 48 (preempting common carriers from state liability for employees' injuries); *Bishop,* 66 F.3d at 588-90 (upholding federal car-jacking statute).

In short, the fact that a contrary state law is collaterally preempted by legislation that regulates and protects an instrumentality of interstate commerce does not render the federal legislation unconstitutional.[6] By eliminating vicarious liability of lessors, Congress is regulating the conditions under which the leased vehicles operate through interstate commerce, and this has long been recognized by the Supreme Court to be within the commerce power of Congress. *See Flagler*, 538 F. Supp. 2d at 559 *(*"With respect to the second category, even before the Supreme Court's radical reassessment of the Commerce Clause in the 1930s, it recognized that 'Congress may legislate about the agents and instruments of interstate commerce, *and about the conditions under which those agents and instruments perform the work of interstate commerce*, whenever such legislation bears, or in the exercise of a fair legislative discretion, can be deemed to bear, upon the reliability or promptness or economy or security or utility of [interstate commerce]'") (quoting *Mondou,* 223 U.S. at 48) (emphasis added); *Dupuis,* 510 F. Supp. 2d at 985 ("While the Graves Amendment may affect a state's ability to impose liability, it regulates the conditions under which motor vehicle lessors operate."). In enacting the Graves Amendment, Congress could have rationally concluded that "shielding rental-car companies from vicarious liability under state tort law would enhance the industry's ability to provide the means for moving people and goods in interstate commerce," *Flagler,* 538 F. Supp. 2d at 561, and thereby promote the reliability, economy, security, and utility of interstate commerce.

Accordingly, regardless of whether it can be viewed as focused on tort liability, the Graves Amendment is constitutional under the second *Lopez* category because, through such tort liability restrictions, it unquestionably seeks to regulate and protect instrumentalities of interstate commerce – namely, rental and leased cars.[7]

---

[6] Plaintiff's related argument regarding federalism concerns (Pl.'s Mem., at 7) also fails for this reason, although it is far from clear whether plaintiff is making the claim that the Graves Amendment violates the Tenth Amendment or simply making a general point that tort law is typically the domain of state law. *See, e.g., United States v. Parker* (3d Cir. 1997) ("If Congress acts under one of its enumerated powers – here its power under the Commerce Clause – there can be no violation of the Tenth Amendment.") (internal quotation omitted).

[7] In any event, even assuming *arguendo* that the Graves Amendment is considered to solely regulate tort liability of motor vehicle lessors, and not the instrumentalities themselves, Congress could rationally conclude that it substantially affects interstate commerce and thus falls under the third *Lopez* category of activities that Congress may regulate as part of its commerce power. That analysis follows in subsection 3, below.

10

### 3. Activities that "Substantially Affect Interstate Commerce"

"The task of a court that is asked to determine whether a particular exercise of congressional power is valid under the Commerce Clause is relatively narrow. The court must defer to a congressional finding that a regulated activity affects interstate commerce, if there is any rational basis for such a finding." *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, 452 U.S. 264, 276 (1981); *see also Gonzales v. Raich*, 545 U.S. 1, 22 (2005) ("In assessing the scope of Congress' authority under the Commerce Clause, we stress that the task before us is a modest one. We need not determine whether respondents' activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding."); *Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765, 778-79 (2d Cir. 1999) ("We, of course, defer to the legislative will where any rational basis may be discerned for finding a substantial effect on interstate commerce from a given activity."); *Bishop,* 66 F.3d at 577 ("The Supreme Court's jurisprudence makes it abundantly clear that our job in this case is not to second-guess the legislative judgment of Congress that carjacking substantially affects interstate commerce, but rather to ensure that Congress had a rational basis for that conclusion."). The courts must defer to Congress if such a rational basis is found, since it is not the proper province of the courts to make the actual findings themselves or second-guess the judgment of the elected officials in Congress.[8]

With this principle in mind, the Court finds that Congress had a rational basis to conclude that the prohibition of vicarious liability for leased vehicles – which is essentially a regulation of the conditions governing motor vehicles leases and rentals – would substantially affect interstate commerce.

The Supreme Court clarified the scope of this third category of "activities that substantially affect interstate commerce" in *United States v. Lopez.* 514 U.S. at 558. In *Lopez*, the Supreme Court acknowledged that it has "upheld a wide variety of congressional Acts regulating intrastate economic activity where [it has] concluded that the activity substantially affected interstate commerce," including the regulation of intrastate coal mining, intrastate extortionate credit transactions, restaurants utilizing substantial interstate supplies, inns and hotels catering to interstate guests, and the production and consumption of homegrown wheat. *Id*. at 559-60 (collecting cases). Some of these cases involved intrastate activity that were not themselves economic in nature, such as discrimination, but were deemed to have an effect on interstate or foreign commerce. *See, e.g.*, *Katzenbach v. McClung,* 379 U.S. 294, 304 (1964) (concluding that Congress had a rational basis for finding that racial discrimination in restaurants had a direct and adverse effect on the free flow of interstate commerce); *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 271-72 (1964) (holding that the public accommodations provisions of the Civil Rights Act of 1964 are valid under the Commerce Clause).

*Lopez*, however, dealt with a "criminal statute that by its terms has nothing to do with

---

[8] In this respect, the Court agrees again with Judge Block that "[a]lthough Judge Moore expressed concern that there was no argument 'that the car rental or leasing industry requires protection, or is in the least bit of danger' [in *Vanguard Car Rental USA, Inc. v. Drouin*, 521 F.Supp.2d 1343, 1350 (S.D. Fla. 2007),] it is for Congress – and Congress alone – to decide when legislation is called for." *Flagler*, 538 F. Supp. 2d at 559.

'commerce' or any sort of economic enterprise, however broadly one might define those terms." 514 U.S. at 561. In that case, the Supreme Court held as unconstitutional the Gun-Free School Zones Act of 1990 ("GFSZA"), which made it a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." *Id*. at 551. The Supreme Court rejected the government's argument that Congress had the power to regulate firearms in this context, based on the theory that the use of firearms had an adverse effect on classroom learning and schools, which could in turn pose a threat to trade and commerce. *See id.* at 565.

As part of its analysis, the Court considered the following four factors: (1) whether the regulated activity was economic in nature; (2) whether the statute contained a jurisdictional element which would ensure that the activity in question affects interstate commerce; (3) whether the statute or its legislative history contained Congressional findings that the activity sought to be regulated substantially affected interstate commerce; and (4) whether the link between the activity and a substantial effect on interstate commerce was not too attenuated. *United States v. Morrison,* 529 U.S. 598, 609-13 (2000); *United States v. Griffith*, 284 F.3d 338, 347 (2d Cir. 2002). Because the Court found that GFSZA failed to satisfy *any* of the four factors, it struck down the statute as an unconstitutional exercise of Congress' legislative authority under the Commerce Clause. *See Lopez,* 514 U.S. at 561-64.

In the more recent case of *Morrison*, the Supreme Court analyzed the constitutionality of the civil remedy provision of 42 U.S.C. § 13981, or the Violence Against Women Act ("VAWA"), using the same factors in *Lopez*. Despite Congressional findings of the impact of gender-motivated violence on interstate commerce, the Court concluded that VAWA also exceeded the scope of Congressional commerce power. *Id.* at 612. The Supreme Court determined that "the existence of congressional findings is not sufficient, by itself, to sustain the constitutionality of Commerce Clause legislation" and found that none of the other factors favored the government. *See id.* at 613-18. *Morrison* held that Congress could not, under the third *Lopez* category, "regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id*. at 617.

Both *Lopez* and *Morrison* examined Congress' authority to regulate purely intrastate activity under the Commerce Clause. Both cases struck down the regulation of a non-economic intrastate activity that was deemed to not have a rational basis for finding the requisite substantial effect on interstate commerce.

As an examination of those cases reveals, the Graves Amendment at issue here is clearly distinguishable from the statutes in *Lopez* and *Morrison*. The first factor – whether the regulated activity relates to commerce or is economic in nature – weighs heavily in favor of upholding the statute. The Supreme Court has made clear that "'where economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained.'" *Gonzales*, 545 U.S. at 25 (quoting *Morrison*, 529 U.S. at 610); *cf. Morrison*, 529 U.S. at 610 ("a fair reading of *Lopez* shows that the noneconomic, criminal nature of the conduct at issue was central to our decision in that case."). Unlike the activities at issue in *Lopez* and *Morrison*, the activity regulated by the Graves Amendment has an evident commercial nexus, whether one characterizes it as the economic protection of car lessors

from vicarious liability, or the rental and lease of vehicles, or the conditions governing the transaction for a leased or rental vehicle. *Accord Graham*, 50 A.D.3d at 61 ("There can be no real dispute that the rental and lease of vehicles, and the conditions under which such transactions occur, are economic activities which impact the national market"); *cf. Gonzales*, 545 U.S. at 26 (describing local, intrastate possession, manufacture, and distribution of drugs as "quintessentially economic," "[u]nlike those at issue in *Lopez* and *Morrison*."); *United States v. Goodwin*, 141 F.3d 394, 399 (2d Cir. 1997) (upholding a federal statute criminalizing money laundering and stating that the statute "has everything to do with commerce" and "[m]oney laundering is a quintessential economic activity") (internal citation omitted). Importantly, plaintiff himself describes the Graves Amendment as regulating the "benefits and burdens between parties to a *commercial* transaction . . . ." (Pl.'s Mem., at 4.) (emphasis added). The Graves Amendment may act to preempt state tort liability law, but it does so because it directly regulates the conditions under which leasing transactions take place and the cost burdens of lessors, lessees, and other drivers on the roads. This is inherently commercial and economic in nature. *See Gonzales*, 545 U.S. at 25-26 ("'economics' refers to the 'production, distribution and consumption of commodities'") (internal citation omitted).

Plaintiff further argues that the Graves Amendment contains no jurisdictional element which would ensure, through a case-by-case inquiry, whether or not the vehicle in question affects interstate commerce. (Pl.'s Mem., at 6.) At oral argument, plaintiff insisted that *Lopez* stands for the proposition that, unless there is a jurisdictional limitation to interstate transactions in the statute, it cannot pass constitutional scrutiny under the Commerce Clause. However, *Lopez* does not stand for any such proposition and, in any event, involved a statute that is clearly distinguishable from the Graves Amendment in this case.

In *Lopez,* the Supreme Court weighed as a factor in its analysis that there was no express jurisdictional element in the statute at issue in that case, which might have limited it "to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Id.* at 562. In this case, however, the lack of express jurisdictional language does not keep the Graves Amendment from passing constitutional muster. *Lopez* did not hold that jurisdictional language was a prerequisite to constitutionality in every case; rather, it was one factor that the Supreme Court took into consideration that weighed against the government, as did the other three factors.[9] *See id.* at 562; *see also Terry*, 101 F.3d at 1418 ("We do not view *Lopez* as holding that federal criminal statutes must contain jurisdictional elements. If a jurisdictional element were critical to a statute's constitutionality, the

_____

[9] Consistent with this proposition, an overwhelming number of courts have upheld statutes without jurisdictionally limiting language against *Lopez* challenges. *See, e.g., United States v. Rybar*, 103 F.3d 273, 285 (3d Cir.1996) (joining five other circuit courts in rejecting challenge based on Commerce Clause against 18 U.S.C. § 922(o), which prohibited the unlawful possession or transfer of machineguns); *United States v. Leshuk*, 65 F.3d 1105, 1111-12 (4th Cir.1995) (upholding 21 U.S.C. § 841(a)(1), the Comprehensive Drug Abuse Prevention and Control Act of 1970 because Congress has the authority under the Commerce Clause to criminalize the intrastate possession, distribution, and sale of controlled substances); *Terry v. Reno*, 101 F.3d 1412, 1415-18 (D.C. Cir. 1996) (upholding 18 U.S.C. § 248, the Freedom of Access to Clinic Entrances Act (FACE), and stating that the lack of a jurisdictional element is not fatal to its constitutionality).

Court in *Lopez* would not have gone on to examine the Government's proffered rationales for the constitutionality of the gun possession statute. *Lopez*'s fundamental proposition is that Congress must ensure that its Commerce Clause power to regulate non-commercial activities extends to only those activities that substantially affect interstate commerce."); *Rybar,* 103 F.3d at 285 ("Although the *Lopez* Court noted the lack of a jurisdictional element in § 922(q) . . . it did not state, as it easily could have, that such a statutory feature was essential."); *United States v. Wilson*, 73 F.3d 675, 685 (7th Cir. 1995) ("In discussing the lack of a jurisdictional element in *Lopez*, the Court simply did not state or imply that all criminal statutes must have such an element, or that all statutes with such an element would be constitutional, or that any statute without such an element is per se unconstitutional.").

More importantly, as discussed *supra*, *Lopez* involved an entirely different kind of statute that targeted noneconomic, criminal activity. *See Garcia,* 540 F.3d at 1252 ("*Reich* makes clear that when a statute regulates economic or commercial activity, *Lopez* and *Morrison* are inapposite. Instead, when an economic activity has a substantial effect on interstate commerce, regulation of that activity must be sustained.") (citing *Gonzales,* 545 U.S. at 25). In this case, the lack of limiting language in the Graves Amendment is not critical because the activity being regulated is already one that is clearly linked to interstate commerce. *Cf. Terry*, 101 F.3d at 1418 (upholding the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248 (1994), under the Commerce Clause and stating, "[a]s the Court explained in *Lopez*, in order to justify the constitutionality of prohibiting gun possession near schools, the Government had to engage in several multi-step analyses to link gun possession to interstate commerce . . . . In the case before us, the chain connecting the prohibited activity and interstate commerce contains only one link"). Leased and rental cars, in particular, are even more likely than non-rental vehicles to be a part of interstate commerce. *Accord Dupuis*, 510 F. Supp. 2d at 985 ("Leased motor vehicles, as a subset, seem to have a closer nexus to interstate commerce than motor vehicles, generally."); *Garcia*, 510 F. Supp. 2d at 837 ("[t]he car rental industry, together with airlines, railroads and over the road bus and trucking enterprises, constitute *the* most visible components of modern interstate commerce") (emphasis in original). The collision in this very case, for example, involved a car that was leased by defendant Ali in New Jersey, the state in which Ali resides, and a collision with plaintiff's vehicle that occurred in the neighboring state of New York. (Compl. ¶¶ 6, 14, 15, 15; Def.'s Mem., Exh. B.) Even if the Graves Amendment may encompass some instances in which the vehicles involved only traveled intrastate, the Supreme Court has stated that "where a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence." *Gonzales*, 545 U.S. at 16 (internal quotations omitted); *see also United States v. Trupin*, 117 F.3d 678 (2d Cir. 1997) ("In seeking to eradicate a problem with an obvious and substantial interstate component, [the statute] reaches acts that in some instances might occur in a single locale. *Lopez* does not prevent this, at least when commerce is clearly implicated."); *Garcia,* 540 F.3d at 1251 ("where Congress comprehensively regulates the national market for a particular good or activity, courts may not pronounce particular intrastate instances of the regulated conduct to have a de minimus effect on the market and therefore to be outside the commerce power"); *cf. United States v. McKinney*, 98 F.3d 974, 980 (7th Cir. 1996) ("The same findings that authorize the federal government to regulate all commerce in controlled substances support its

14

authority to regulate a subset of commerce in controlled substances," i.e., the selling of narcotics in school zones.), *cert. denied*, 520 U.S. 1110 (1997).

With respect to the third factor considered by *Lopez* and *Morrison*, *Lopez* clarified that "Congress normally is not required to make formal findings as to the substantial burdens that an activity has on interstate commerce." 514 U.S. at 562. Rather, the existence of such findings play a key role only where "no . . . substantial effect [is] visible to the naked eye." *Id*. at 563. In this case, the effects on interstate commerce are hardly invisible. *Cf. Ace Auto Body & Towing, Ltd.*, 171 F.3d at 778-79 (holding that 49 U.S.C. § 14501(c) preempts the state's consensual tow rate regulations and does not exceed Congress' authority, in part because the effect on interstate commerce is "far from invisible"). In fact, even the one federal court that has found the Graves Amendment to be unconstitutional has noted that Congressional discussions on the statute posited "that the liability may result in increased costs to the business, and thus to the consumer," as well as possibly increase costs for smaller businesses. *Huchon*, 532 F. Supp. 2d at 1381 (citing 151 Cong. Rec. S5433-03 (2005)).

Finally, it is clear that the final *Lopez* consideration also weighs heavily in favor of finding the Graves Amendment constitutional. The aggregate effect on interstate commerce of the Graves Amendment is far from attenuated. The act of leasing a car and potentially getting into an accident is a commercial and economic activity that, when viewed in the aggregate, substantially affects the other vehicles on the roads, as well as the national car leasing and rental industry. This is true even if a particular vehicle is only driven intrastate because it is the cumulative effect of what is regulated that is determinative, not a single instance evaluated by itself. *See Graham*, 50 A.D.3d at 60. Even plaintiff concedes that "owners and lessors may choose to respond to the imposition of liability by changing their fee structures which may affect interstate commerce." (Pl.'s Mem., at 6.) The relationship between the subject of regulation and the larger impact on interstate transportation and commerce is thus not attenuated, but rather direct and obvious.

As the Eleventh Circuit recently explained in upholding the Graves Amendment:

> It is plain that the rental car market has a substantial effect on interstate commerce. It is also apparent that Congress rationally could have perceived strict vicarious liability for the acts of lessees as a burden on that market. The reason it could have done so is that the costs of strict vicarious liability against rental car companies are borne by someone, most likely the customers, owners, and creditors of rental car companies. If *any* costs are passed on to customers, rental cars – a product which substantially affects commerce and which is frequently an instrumentality of commerce – become more expensive, and interstate commere is thereby inhibited. Moreover, if significant costs from vicarious liability are passed on to the owners of rental car firms, it is possible that such liability contributes to driving less–competitive firms out of the marketplace, or inhibits their entry into it, potentially reducing options for consumers. We do not know with any certainty the incidence or effect of these costs, and we do not have to know. It is enough that Congress rationally could have perceived a connection between permissible ends,

namely increasing competition and lowering prices in the rental car market, and the means it chose to effectuate them, preempting vicarious liability suits.

*Garcia*, 540 F.3d at 1253 (footnote omitted). Moreover, in reaching this decision, the Eleventh Circuit explicitly rejected the argument made in the instant case that the Graves Amendment is unconstitutional because it is really regulating state tort law, rather than the rental car market:

> Appellants protest that the Graves Amendment does not regulate the rental car market at all, but state tort law. This is a distinction without a difference, as the state tort law preempted by the statute regulates the rental car market; in other words, the effect of the statute is to deregulate the rental car market. And it has long been understood that the commerce power includes not only the ability to regulate interstate markets, but the ability to facilitate interstate commerce by removing intrastate burdens and obstructions to it.

*Id*. at 1252 (citations omitted).

In sum, taken together, the factors considered by the Supreme Court in *Lopez* weigh strongly in favor of finding the Graves Amendment as a constitutional exercise of Congressional power to regulate "those activities that substantially affect interstate commerce." *Lopez*, 514 U.S. at 558. This Court has no cause to be concerned that, through the Graves Amendment, Congress may obliterate the "distinction between what is truly national and what is truly local." *Id.* at 567-68. In passing the Graves Amendment, Congress could have rationally concluded that the national car rental and leasing industry, as an integral part of interstate commerce, would be better served by protecting lessors from vicarious liability costs, and having found that such a rational basis could exist, this Court must uphold the Congressional legislation under the Commerce Clause of the Constitution.

IV. CONCLUSION

For the foregoing reasons, plaintiff's claim against Provident must fail as a matter of law. The Court concludes that the Graves Amendment was a valid exercise of Congressional power under the Commerce Clause of the United States Constitution, and plaintiff's claim under Section 388 of the New York Vehicle and Traffic Law is, thus, preempted. Defendant Provident's motion for summary judgment is hereby granted.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: November 7, 2008
Central Islip, NY

\* \* \*

The attorney for plaintiff is Gary R. Klein, Weitz & Luxenberg, P.C., 180 Maiden Lane, 17th Floor, New York, New York 10038. The attorney for defendant Provident Auto Leasing Company is Frank A. Composto, Composto & Composto, 142 Joralemon Street, Brooklyn, New York 11201. The attorney for defendant Atut Ali is Jeanne L. Ramasso, Cartiglia, Connolly & Russo, 100 East Old Country Road, Mineola, New York 11501.